IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DONALD A. BOULDEN,

       Petitioner,

v.                                            CIV 09-0770 BB/KBM

JAMES JANECKA, Warden, et al.,

       Respondents.

# PROPOSED FINDINGS
## AND
## RECOMMENDED DISPOSITION

Released from prison after serving a lengthy sentence, Donald Boulden quickly reoffended.  He is now incarcerated on a twenty-seven year sentence for kidnapping and criminal sexual penetration, the same sort of offenses as his prior crimes.  *See Doc. 12-2* at 31-37.  He filed petition for a writ of habeas corpus relief under 28 U.S.C. § 2254, *Doc. 1*, and because he filed after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), its standards apply to this case, *e.g.*, *Abdul-Kabir v. Quarterman,* 550 U.S. 233, 246 (2007); *DeLozier v. Sirmons,* 531 F.3d 1306, 1319 (10th Cir. 2008).

Respondents answered and, among other things, assert that the petition contains both exhausted and unexhausted claims.  They make this assertion in conclusory fashion, and do not specify which claims they consider exhausted and which they consider unexhausted.  *See Doc. 12* at 7-8.  A glimpse at the petition and certain state court pleadings illustrates why the State probably took that route. Petitioner's submissions are mind-numbingly long, detailed, interrelated, and repetitious.  I have taken the time to painstakingly comb through the petition and attachments, as well as the attachments to Respondents' Answer.  For the reasons below, I recommend that the federal petition be found "mixed" and these proceedings only go forward if Petitioner elects to delete the unexhausted claims.

# I.  Federal Claims

Using a uniquely crafted version of our standard § 2254 form, Petitioner numbers his multi-part claims "one" through "twelve."  *See Docs. 1, 1-2, 1-3, 1-4.* He raises another claim in his "supplement," bringing the total to thirteen.  *See Doc. 11.*  I will not use his numbering system because it is simply too confusing.  His numerous claims revolve around several themes, which I classify and briefly describe as follows:

*Suggestive Photo Array.*  Instead of using a photo array, officers showed a

2

copy of Petitioner's page from the New Mexico "sex offender registry" to witnesses, who subsequently identified him. He asserts that this is unconstitutionally suggestive, and that his attorney was ineffective in failing to move to suppress the photo identification. *See Doc. 1* at 18, 23-26; *Doc. 1-2* at 10-11.

*Petitioner's Inculpatory Pretrial Statements.* Petitioner gave two statements to the police. Boulder contends that because the prosecutor was involved with the case at the point of his first statement, he was technically "in custody" yet was questioned without having been given his *Miranda* rights. He argues that this defect in turn "poisoned" the second statement. Boulden also asserts that the second statement is defective in its own right because after being *Mirandized* and invoking his rights, the questioning did not cease. Maintaining that these procedures are unconstitutional and amount to prosecutorial misconduct, he also asserts that his attorney was ineffective by failing to move to suppress the statements and/or have the indictment dismissed because of them, as well as in failing to "impeach" Petitioner's inculpatory statements as "lies." *See Doc. 1* at 18, 21-22, 28-29; *Doc. 1-2* at 11-15, 32; *Doc. 1-3* at 2, 4-6, 18-31; *Doc. 1-4* at 31-36.

*Temporary Mental Incompetence.* Petitioner asserts that, before his arrest, he was suffering from post-traumatic stress disorder as a result of being the "victim [of] a violent Spanish gang attack" that resulted in his hospitalization. He argues

3

that this explains his conduct during police questioning by a Hispanic officer. *Doc. 1-3* at 24; *see also id.* at 24-27.

The docket sheet further shows that the prosecutor filed a "Request for Notice of Defense of Insanity and Defense of Incapacity to Form Specific Intent," along with the initiating complaint. *See State Docket Sheet* (8/4/05). Petitioner states that the trial court "called for a 60-day evaluation for rehabilitation" to take place. *Doc. 1-2* at 29. However, Boulden's competency was never evaluated even after he suffered a "mental breakdown" in the court's holding cell requiring paramedic intervention following a January 3, 2006 pretrial hearing. *Doc. 1* at 9. The trial judge was made aware of this episode. *Id.*

Boulden alleges that after the breakdown, he was medicated with "mind-altering" psychiatric drugs and was placed on a suicide watch in jail. Petitioner contends that his attorney was ineffective for failure to move for a competency hearing before the plea was entered in February 2006, and that the trial judge erred in not scheduling a competency hearing *sua sponte. See, e.g., Doc. 1* at 9, 16-18; *Doc. 1-2* at 15, 19-20, 25, 28-29. In addition, Petitioner explains that his incompetence was only temporary. Boulden assert that upon entering the penitentiary, he quit taking his medication "'cold turkey' . . . and has functioned effective well ever since, even to such a degree as preparing and presenting his

State Habeas corpus, State Appeal, and this pro se Federal Petition.  This makes

the question come to light whether Petitioner should have been on a mind-altering

psyc drug at all."  *Doc. 1-2* at 29.

*Correctional Officer Coerced Defendant To Sign The Plea Agreement*

*Without Counsel.*  Most of Petitioner's pleadings are devoted to what he calls the

"circumstances."  After his mental breakdown and in his vulnerable state on

suicide watch under the influence of mind-altering drugs, a correctional officer

allegedly approached Boulden with a written plea offer from the prosecutor.  The

officer "entered the cell, stood over the drugged prisoner and began threateningly

demanding him to sign the plea . . . refused to let Defendant phone defense

counsel, nor would he call for the prisoner."  *Doc. 1* at 16.  Evidently Defendant did

not immediately sign, because he alleges that the correctional officer and his

supervisor returned

> [a]n unknown amount of time later, . . . stood over the
> prisoner and began demanding he sign the plea [and] the
> drugged prisoner, on the empty floor of the suicide cell,
> fearful of the two several-hundred pound officers standing
> over him, began to complete the plea as ordered and the
> officers left briefly.  A female officer, perhaps taking pity
> on the prisoner, had him address an envelope to his
> attorney, took the plea, and dropped i[t] into the mail.  A
> week later, Defendant phoned counsel, told him what
> occurred, and counsel said he would"'take care of it."

*Id.* at 16-17.  Petitioner asserts that this "prosecutorial" misconduct deprived him of the right to counsel at a critical stage in his proceedings, and the coercion rendered his plea involuntary.  He also asserts that his attorney was ineffective in failing to correct the situation as promised or to bring the coercion to the attention of the trial court prior to the acceptance of the plea.  *See id.* at 17-21, 28; *see also Doc. 1-4* at 25-27.

  *Other Alleged Instances of Ineffective Assistance.*  Aside from not moving to suppress the photo identification and inculpatory statements, and failing to investigate the mental competency issue or to challenge the coercion, Petitioner also asserts that his attorney was ineffective:

> ! due to conflict of interest because he "accepted employment elsewhere and thus needed to dispose of pending cases quickly."  *Doc. 1* at 7;

> ! by failing to inform Petitioner that he faced an indeterminate mandatory parole period, *id.* at 13-14, 26-27;

> ! by failing to provide copies of discovery from the prosecution to Petitioner until after sentencing, *id.* at 14-15; *Doc. 1-2* at 6-7

And in vague and conclusory fashion, Boulden contends that counsel did not investigate, prepare, and subject the prosecution's case to "adversarial testing."  *See id.* at 18, 30-33.

6

*Involuntary Plea.*  Petitioner asserts that all of the preceding "problems" rendered his plea involuntary and, therefore, he should have been allowed to withdraw it and go to trial.  He further alleges that having been deprived of counsel (and other information that counsel possessed) at the coercive signing, he had no way of "intelligently" entering the plea.  *See, e.g., Doc. 1* at 30-36; *Doc. 1-2* at 1-22; *Doc. 1-4* at 28-30.  He also asserts that his diminished mental capacity rendered him incapable of doing anything to himself at the plea and sentencing hearings to inform the trial court about the "circumstances:"

> Defendant has no conscious memory of a plea hearing on or about February 7, 2006, but had always informed [the] Court he was under the influence of psyc drugs.  At the sentencing, being in a constant state of "sleep-walking" and fear, with no advice from Counsel as to the illegalities of the situation, knew no better than to say "yes" when asked if the plea was voluntary and discussed with counsel.

*Doc. 1* a 16-17 (emphasis original).[1]  Finally, in his Supplement, Petitioner contends that the plea was "null and void" from the outset for a technical reason – he signed it after the stated deadline.  *See Doc. 11.*

---

[1]  *See also, e.g., Doc. 1-2* at 19 (trial court on notice of a "mental breakdown" and "daily psych medication" "cannot in good faith, conscience, or morally, expect a defendant . . . to explain to Court the legal constitutional violations, coercion, circumventions of counsel by Prosecution at a critical stage, etc., when Court asks if he or she is entering the plea willingly. . . Telling Court about those "circumstances" was Counsel's duty.").

*Prejudice.*  Petitioner maintains that because he was wholly deprived of counsel when he signed the agreement, he need not show any prejudice to prevail. *See Doc. 1* at 17, 19, 20, 21, 32.  Conversely, he maintains that the prejudice flowing from counsel's conduct and the plea agreement are established by the record.  In this regard he discusses the "sufficiency" of the evidence and also mentions "sufficiency" as a separately-numbered claim.  *See Doc. 1-3* at 40-41; *Doc. 1-4* at 1-11.  I do not, however, construe this as an assertion of a traditional *Jackson* claim.[2]

First, his plea agreement emphasizes that it is an agreement "to plead no contest."  *See Doc. 12-2* at 8 (emphasis original).  The traditional *Jackson* inquiry is not applicable to such pleas, though there may or may not be a factual component to evaluate in determining the voluntariness of them in the habeas context.[3]

─────────────────────

[2]  *See Jackson v. Virginia,* 443 U.S. 307, 321 (1979)("a state prisoner who alleges that the evidence in support of his state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt has stated a federal constitutional claim").

[3]      Ms. Green primarily argues that the district court erred in concluding that no factual basis was required to support her no contest plea.  Largely for the reasons stated in the district court's opinion, we disagree.  Ms. Green's contention that the state court lacked a factual basis to support her plea does not, by itself, present a basis to invalidate her plea in a federal habeas corpus action.  *See Glasper v. Tulsa Cty. Dist. Court,* 67 F.3d 312 (Table), 1995 WL 578983 at *3.  "Only when a defendant proclaims his innocence while pleading guilty have federal courts required a judicial finding

Nothing in the record or in Petitioner's allegations suggest if that is the case here.

Indeed, Petitioner's "sufficiency" argument is the reason why he believes the record shows that he can establish "prejudice" – that is, whether he "would not have pled guilty but proceeded to trial and taken his chances there." *Doc. 1* at 28. Boulden believes that the trial court applied the wrong standard in finding that he suffered no prejudice from counsel's conduct:

> Trial Court also stated at the evidentiary hearing (from memory): 'Defendant has not shown enough prejudice,' hereby establishing the fact it was present and seen. Petitioner suggests the amount of prejudice cannot be known, *and is unaware of any precedent set by our United States Supreme Court that it must be overwhelming.*

---

of some factual basis for the plea as an essential part of the constitutionally required finding that the plea was voluntary." *Wallace v. Turner,* 695 F.2d 545, 548 (11th Cir. 1983) (citing *North Carolina v. Alford,* 400 U.S. 25, 38 n. 10 (1970)); *accord Perkis v. Sirmons,* 201 Fed. App'x. 648, 651 (10th Cir. 2006).

*Green v. Koerner,* 312 Fed. App'x. 105, 108-109 (10th Cir. 2009); *see also, e.g., Smith v. McCotter,* 786 F.2d 697, 702-03 (5th Cir. 1986) (" State courts are under no constitutional duty to establish a factual basis for the guilty plea prior to its acceptance, unless the judge has specific notice that such an inquiry is needed. *Hobbs v. Blackburn,* 752 F.2d at 1082. . . . The *Jackson v. Virginia* . . . mandate that sufficient evidence exist from which a rational fact finder could find guilt beyond a reasonable doubt is inapplicable to convictions based on a guilty plea. "); *Odom v. Evans,* 1991 WL 261673 at * 1 (10th Cir. 1991) ("courts generally are not required by the due process clause of the federal constitution to establish a factual basis for a guilty plea. *See Sena v. Romero,* 617 F.2d 579, 581 (10th Cir. 1980). *See also Smith v. McCotter,* 786 F.2d 697 (5th Cir. 1986); *Rodriguez v. Ricketts,* 777 F.2d 527 (9th Cir. 1985); *Willbright v. Smith,* 745 F.2d 779 (2nd Cir. 1984). The due process clause may require an inquiry by the court in certain circumstances such as a situation in which a defendant protests innocence. *See North Carolina v. Alford,* 400 U.S. 25 (1970). Petitioner, however, has not alleged any such circumstances. He therefore has not raised a federal constitutional claim warranting relief under 28 U.S.C. § 2254.").

*Doc. 1-2* at 3 (emphasis added).  Instead, Petitioner speaks of "prejudice" in terms of "a reasonable probability" that he would have gone to trial instead of pleading guilty.  *E.g. Doc. 1* at 28.  For example, he

> acknowledges he was in fact looking at the possibility of natural life in prison if convicted at trial. [But,] [e]ven in the context of a plea bargain, if he had been informed of the five to twenty (5-20 yr.) year indeterminate period of parole that could conceivably add seventeen years or more if violated . . . or twenty (20) years straight if never paroled, . .  then it virtually amounts to natural life in prison anyway.

*Doc. 1* at 27.

Petitioner contends that the State's case against him was not strong to begin with because the "forensic report was all 'negative' findings and could not conclusively point to Defendant," and because the witness descriptions of the person did not accurately describe Petitioner's physical attributes.  *Doc. 1* at 33, *see also id.* at 30; *Doc. 1-2* at 11.  Thus, had counsel successfully challenged the photo identification and inculpatory statements, the State's "case would have been severely weakened, *if not destroyed.*"  *Doc. 1-2* at 12 (emphasis original); *see also id.* at 14 ("Defendant has never admitted guilt, either during Rule 11 colloquy or in post-conviction proceedings.  Trial Court never questioned Defendant about any elements of the charges to substantiate a basis of guilt admittance to satisfy itself

10

that the plea of guilty was justified [because the plea was "no contest"]. . . .  Since

Trial Court did not substantiate guilt from Defendant's own mouth, there could

only be guilt basis by the [first] Statement.").

     *Sentencing.*  Several "double jeopardy" claims concern how the sentence was

calculated and the amendment made to his sentence on motion by the State in

light of new caselaw.[4]  Petitioner believes this amounts to a nullification of the first

plea bargain and substitution of a "new" plea bargain that was wholly involuntary

since he never agreed to the new sentence.  He believes that this "substitution" and

other sentencing calculations violate "double jeopardy."  He faults his attorney for

failing to "object" to this "substitution" procedure and for failing to inform him that

he had to register as a sex offender under a state decision issued after his plea and

sentence.  He also believes his sentence violates *Apprendi.  See Doc. 1* at 28, 33;

*Doc. 1-2* at 2-3, 5-6, 21; *Doc. 1-3* at 32-39; *Doc. 1-3* at 12-24.

# II.  Claims Not Presented To The State Courts

---

    [4]  That is: the kidnapping and CSP counts should have merged for sentencing purposes. *Doc. 1-4* at 14-17; imposing multiple habitual offender sentences stemming from one criminal case constitutes double jeopardy, *id.* at 17-19; imposing a habitual offender increase and an aggravated circumstances increase violates double jeopardy, *id.* at 19-21; resentencing to add an indeterminate period of parole violates double jeopardy. *id.* at 21-22; and, New Mexico's "enhancements statutes" constitute multiple punishments for the same offense, in violation of *Apprendi, id.* at 22-24.

After his appointed attorney was unsuccessful in having the criminal proceedings dismissed, Petitioner changed attorneys and thereafter entered a no contest plea.  Among other things, in his agreement, he waived a direct appeal. *See, e.g., Doc. 12-2* at 8-9; *Doc. 12-7* at 14-18 (hereinafter "*State Docket Sheet*"). Petitioner was sentenced on May 16, 2006, after an evidentiary hearing at which evidence of aggravating factors was introduced and relied upon by the judge, in addition to habitual offender information, in sentencing.  *See, e.g., 12-2* at 3-5, 13-16; *Doc. 12-3* at 2.

A few months thereafter, the State moved to "correct" the "illegal" sentence. *State Docket Sheet* (7/12/06).  In light of this motion, defense counsel countered with his own motion to "reconsider the sentence" as excessive.  *See Doc. 12-2* at 24. Petitioner also countered with a *pro se* state petition for habeas corpus that raised eleven separate grounds concerning the sentence only, to which the State responded.  *See Doc. 12-2* at 38-49;  *Doc. 12-2* at 50-57 (State's response to initial *pro se* habeas petition).  In light of these counter defense motions, the trial court appointed Public Defender Marc Gordon from the "Habeas Corpus Litigation Unit" to represent Petitioner.  *See State Docket Sheet* ((7/31/06, 8/17/06, 8/23/06). Petitioner prepared a "rebuttal" to the State response, *see Doc. 12-3* at 11-36, as well as an "adjoindment (sic) argument to and for amended habeas corpus," *see*

*Doc. 12-4* at 1-30.

Mr. Gordon filed an "amendment to petition for writ of habeas corpus" that "without abandoning any claims in his pro-se petition, . . . Rebuttal . . . and Adjoinment (sic) . . . which are attached to this amendment," added several more claims including some brought under the federal constitution. *Doc. 12-3* at 1. The State argued that counsel's amendment was untimely, *see Doc. 12-4* at 32, and ignored addressing the *pro se* claims raised in the attachments, *see id.* at 32-39. I am unable to conclude definitively that the trial eliminated all of the *pro se* issues based on the record presently before me. Instead, the trial court's written decision set an evidentiary hearing on the "Amended Petition for Writ of Habeas Corpus" without excising the *pro se* attachments, and included a catch-all finding that "petitioner's other claims are without merit." *Doc. 12-4* at 40-41; *see also Doc. 12-5* at 5-6 (Mr. Gordon's petition for certiorari indicates that the "parties agreed that the issue was whether Petitioner would have gone to trial if his attorney" had advised him of parole consequences, but that "Petitioner also testified to other [unspecified] things that he believed that his attorney did not do that constituted ineffective assistance of counsel.").

As best I can tell given the copy quality of some of the *pro se* pages, the counseled and *pro se* pleadings before the district court when taken together raise

or at least introduce the factual cornerstones and contention of a federal

constitutional problem for all of the claims presented in the federal petition[5] *except*

*the following:*

> (1) the photo array was suggestive;

> (2) counsel failed to move to suppress the photo identification;

> (3) counsel failed to raise the "nullification" issue; and

> (4)  counsel failed to advise him that he would be required to register

---

[5]  In addition to asserting that his attorney was ineffective in handling the aggravation aspects of the evidentiary hearing, the state petition raises Petitioner's double jeopardy sentencing claims that kidnapping and CSP merged, and multiple habitual offender sentences from one case were raised over the course of grounds one through eight and ten of the *pro se* state petition.  *See Doc. 12-2* at 41-42.

His "rebuttal" elaborates on his sentencing claims, *see Doc. 12-3* at 11-30, and raises the issues of:  his competency, the voluntariness of his plea, the voluntariness of his confession due to his competency and overbearing police tactics, *id.* at 30-35; *see also id.* at 35 ("The Defendant's conviction and sentence should be set aside on grounds of involuntary plea and confession alone.").

His "adjoinment" again elaborates and, in so doing, adds claims.   It provides that his first statement was not accompanied by Miranda rights and was conducted while the prosecutor was involved, and that in his second statement the police did not observe his invocation of Miranda rights in violation of the "Fifth Amendment" and "Due Process" and "Sixth Amendment."  *Doc. 12-4* at 1-10, 17-21.  In it Petitioner also recounts his breakdown, the court's awareness of it, his return to a suicide cell in jail, and the alleged coercion by a correctional officer to sign the plea, which, coupled with his competency rendered his plea involuntary.  *Id.* at 11-13.  He faults counsel for failing to bring all of this to the court's attention, *id.* at 14-16, and for failing to ask for a competency hearing, tell his client about certain sentencing consequences, to provide his client with documents, submit the evidence to "meaningful adversarial testing" and being more concerned with closing cases quickly to close up his current practice, *id.* at 22-25; *see also id.* at 30 ("This case is so wrought full of errors, misconduct, due process and constitutional violations and prejudicial ineffective assistance of counsel").

Mr. Gordon's "amendment" raised the *Apprendi* claim and the involuntariness of the plea based on counsel's failure to advise Petitioner about the parole consequences.  *Doc. 12-3* at 4-7.

as a sex offender.[6]

The proceedings on certiorari to the New Mexico Supreme Court mirrored those in the district court.  Thus, the omitted claims were not presented to it either.  *See Doc. 12-5* at 2 ("Petitioner wishes to preserve his pro-se issues pursuant to *O'Sullivan v. Boerckel,* 526 U.S. 383 (1999)"); *id.* at 15-26 (Exhibit B to petition for certiorari is pro se state habeas petition); *id.* at 42-44 (Exhibit D to petition for certiorari is counsel's amendment and its *pro se* "rebuttal" and "adjoinment" attachments).

# III.  Exhaustion

The long-standing requirement that a state habeas petitioner exhaust state remedies for every federal habeas claim remains after the passage of AEDPA:

> "Congress has emphatically directed us that habeas petitioners seeking relief in federal court must first exhaust all available state court remedies-that is, unless doing so would be futile because of 'an absence of available State corrective process' or because 'circumstances exist that render such process ineffective

---

[6]   This  claim seems incredible given that it was his sex offender registry photo that is the basis of the photo array claim and the fact that the New Mexico sex offender registry shows that he was initially registered in February 2003, years before the complaint in the criminal case at issue).  *See* www.nmsexoffender.dps.state.nm.us.   I also note that the state pleadings do not specifically mention:  (1) his detailed argument why the State case was weak and therefore he can establish prejudice or (2) his belief that the legal consequences of allowing the State to amend the sentence "nullified" the written plea agreement.  However, I consider these items to be legal argument and not independent claims.

> to protect the rights of the applicant.'" *Magar v. Parker,*
> 490 F.3d 816, 818 (10th Cir. 2007) (quoting 28 U.S.C.
> § 2254(b)(1)).   Under this requirement, "federal district
> courts may not adjudicate mixed petitions for habeas
> corpus, that is, petitions containing both exhausted and
> unexhausted claims." *Rhines* [*v. Weber,* 544 U.S. 269, 279
> (2005)] (summarizing *Rose,* [*v. Lundy,* 455 U.S. 509, 518-
> 19 (1982)]; *see also Allen* [*v. Zavaras,* 568 F.3d 1197, 1201
> n. 7 (10th Cir. 2009)] (discussing mixed petitions and
> *Rhines*).

*Fairchild v. Workman,* 579 F.3d 1134, 1155 (10th Cir. 2009); *see also, e.g., O'Sullivan v. Boerckel,* 526 U.S. 838, 842 (1999) ("The exhaustion doctrine, first announced in *Ex parte Royall,* 117 U.S. 241 (1886), is now codified at 28 U.S.C. § 2254(b)(1)").  This remains so because the State is to be given an "opportunity to pass upon and correct alleged violations of its prisoners' federal rights."  *Baldwin v. Reese,* 541 U.S. 27, 29 (2004) (internal quotations omitted); *see also e.g., Wilson v. Workman,* 577 F.3d 1284, 1294 (10th Cir. 2009).

In order to satisfy the purposes for the exhaustion requirement, "the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim."  *Baldwin,* 541 U.S. at 29 (citing *Duncan,* 513 U.S. at 365-366 and *O'Sullivan,* 526 U.S. at 845); *see also Anderson v. Harless,* 459 U.S. 4, 6 (1982).

> Thus, although a habeas petitioner will be allowed to present "bits of evidence" to a federal court that were not presented to the state court that first considered his claim, evidence that places the claims in a significantly different legal posture must first be presented to the state courts. *Hawkins* [*v. Mullin,* 291 F.3d 658, 670 (10th Cir. 2002)] (quoting *Demarest* [*v. Price,* 130 F.3d 922, 932 (10th Cir. 1997)](further quotations omitted)).

*Wilson,* 577 F.3d at 1295.

In footnote 5, I identified the permissible "bits of evidence" in this case. Nonetheless, four unexhausted claims have never been presented to the state courts. When faced with a "mixed petition" – one that contains both exhausted and unexhausted claims – this Court has limited options:

> A district court may stay a mixed habeas petition pending exhaustion of unexhausted claims. The Court cautioned, however, "stay and abeyance should be available only . . . when the district court determines there was good cause for the petitioner's failure to exhaust" and where the unexhausted claims are not "plainly meritless." . . . "[I]f a petitioner presents a district court with a mixed petition and the court determines that stay and abeyance is inappropriate, the court should allow the petitioner to delete the unexhausted claims and to proceed with the exhausted claims if dismissal of the entire petition would unreasonably impair the petitioner's right to obtain federal relief."

*Allen v. Zavaras,* 568 F.3d 1197, 1201 (10th Cir. 2009) (citations omitted).

I find no good cause for petitioner's failure to include the omitted claims.

Petitioner was represented by counsel throughout the entire state habeas proceedings, and counsel made sure that all of the claims Petitioner wanted to pursue were before the state courts.  None of the state courts struck the *pro se* pleadings or otherwise indicated that they were limiting the scope of their proceedings.  Thus, I will not recommend staying these federal proceedings.

I also will not recommend dismissal of the case.  Among other things, AEDPA contains a one-year statute of limitations governing habeas claims. Federal petitions do not toll the limitations period.  By the time the deadline for objections and District Judge Bruce Black's ruling on these proposed findings pass, this suit will have been pending for at least four months.  Moreover, almost three months elapsed without any State filings after certiorari[7] was denied in the habeas proceedings, and the seven months Petitioner then spent seeking transcripts that do toll the limitations period, will push this case well past the limitations period.[8]

---

[7]  Once the State concludes the post-conviction proceedings, the AEDPA statute begins to run.  Unlike with direct appeal, there is no ninety-day period in which to petition the Supreme Court of the United States for review.  *See, e.g., Roper v. Weaver,* 550 U.S. 598, 601 (2007); *Lawrence v. Florida,* 549 U.S. 327, 333-34 (2007).

[8]  After the New Mexico Supreme Court denied certiorari on December 4, 2008, Petitioner waited almost three months and then pursued motions for transcripts and evidence, and an unsuccessful appeal trying to resurrect his habeas claim in the wrong court, that eventually was denied as untimely by the New Mexico Supreme Court on June 22, 2009.  *See State Docket Sheet* (2/17/09 - 6/22/09); *see also, e.g., Rhines,* 544 U.S. at 274-75 ("Although the limitations period is tolled during the pendency of a 'properly filed application for State post-conviction or other collateral review,' § 2244(d)(2), the filing of a petition for habeas corpus

18

Thus, I will recommend that this allow Petitioner to amend his federal petition to delete the unexhausted claims. Because Boulden's pleadings are all too lengthy and tend to add items at every turn, I believe the wiser path is to have Petitioner signify his deletion by a one-page document and not be permitted to resubmit another federal petition. Of course, Petitioner may elect to exhaust, but if he does, this federal habeas suit will be dismissed, and he is advised that the federal one-year limitations period applies to all the claims in this petition including those he has exhausted.[9]

---

in federal court does not toll the statute of limitations") (citing *Duncan v. Walker,* 533 U.S. 167, 181-82 (2001)); *Allen v. Siebert,* 552 U.S. 3, 7 (2007) ("We therefore reiterate now what we held in *Pace* [*v. DiGuglielmo,* 544 U.S. 408 (2005)]: "When a postconviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)." . . . . Because Siebert's petition for state postconviction relief was rejected as untimely by the Alabama courts, it was not "properly filed" under § 2244(d)(2). Accordingly, he was not entitled to tolling of AEDPA's 1-year statute of limitations."); *Sindar v. Turley,* 2009 WL 2734661 at * 2 (10th Cir. 2009) ("The AEDPA allows for tolling during the time in which "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending. . . ." 28 U.S.C. § 2244(d)(2). *Mr. Sindar's state filings, however, did not challenge his conviction or sentence.* He applied for a protective order and made three claims for "malfeasance in office," none of which sought post-conviction relief for himself or collateral review of the judgment against him. Thus, none of his state filings tolled the statute of limitations.") (emphasis added); *Gray v. LeBlanc,* 2001 WL 1692430 at * 1 (5th Cir. 2001) ("Gray argues that the limitations period should be equitably tolled during the time that he diligently sought a copy of the transcript of the postconviction evidentiary hearing which was allegedly necessary to enable him to file a writ application to the Louisiana court of appeal. Gray has not shown that the transcript of the postconviction evidentiary hearing was necessary to enable him to file a writ application to the Louisiana court of appeal.").

[9]       Salazar may contend that a magistrate judge gave him "bad advice" in February 2003 by suggesting to him the option of returning to state court to pursue his unexhausted claims. However, the magistrate judge specifically advised Salazar that "the one-year

# IV.  Expansion Of Record

Petitioner requests discovery and to expand the record.  *See Doc. 3.*  In the event that these proceedings go forward on his certification for deletion, I also recommend that the motion be granted in part.

Wherefore,

IT IS HEREBY RECOMMENDED AS FOLLOWS:

1. The four claims identified above be found unexhausted and the federal petition "mixed;"

2. The *Rhines* "stay and abeyance" procedure be found unwarranted;

3. Unless Petitioner files a certificate to delete the unexhausted claims, the Petition be dismissed, and Petitioner is put on notice that the AEDPA statute of limitations applies to all claims brought in this action;

4. If Petitioner elects to delete the unexhausted claims, he must do so by a one-page certification of the same and may not file an amended petition.  Any attempt on his part to file an amended

---

statute of limitation still applied to all of the claims in this petition, including those that have been exhausted." (Exh. J.). Moreover, "'[a] defendant does not have a constitutional right to receive personal instruction from the trial judge on courtroom procedure'" and "'the Constitution [does not] require judges to take over chores for a pro se defendant that would normally be attended to by trained counsel as a matter of course.'"  *Pliler v. Ford,* 542 U.S. 225, . . .(quoting *McKaskle v. Wiggins,* 465 U.S. 168, 183-84 (1984)).

*Salazar v. Lemaster,* 130 Fed. App'x 208, 210 (10th Cir. 2005).

petition will be stricken by the Clerk;

5. Petitioner's certification must be filed no later that the date objections to these proposed findings are due; and

6. If these proposed findings are adopted and the matter proceeds on the exhausted claims, Petitioner's request for discovery and to expand the record *(Doc. 3)* be GRANTED IN PART and, accordingly, within 30 days of the adoption order Respondents expand the federal record to include copies of: all state documents that constitute the "Record Proper;" the tape log; transcripts (preferably) or tapes off all state court criminal and post-conviction proceedings; and all other relevant documentary evidence.

THE PARTIES ARE FURTHER NOTIFIED THAT:

WITHIN 10 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). A party must file any objections with the Clerk of the District Court within the ten-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.

_____
UNITED STATES MAGISTRATE JUDGE

21