IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DONALD A. BOULDEN,

      Petitioner,

v.                                      CIV 09-0770 BB/KBM

JAMES JANECKA, Warden, *et al.*,

      Respondents.

# FINAL PROPOSED FINDINGS
# AND
# RECOMMENDED DISPOSITION

      This habeas matter is before the Court on Petitioner's exhausted federal claims and Respondents' submission of state court records.  *See Doc. 14* at 2-11, 14-15 (prior proposed findings setting forth the exhausted and unexhausted claims); *Doc. 16* (order overruling objections and adopting prior proposed findings); *Doc. 20* (transmittal of record proper); *Doc. 26* (order to supplement); *Doc. 27* (transmittal of supplemental record proper).  My prior proposed findings, which I incorporate herein by reference, discuss the general background facts and identify the federal habeas claims.  This final set of proposed findings focus on the dispositive legal issues.

      Because Petitioner filed after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), its standards apply to this case.  *E.g., AbdulKabir v. Quarterman,* 550 U.S. 233, 246 (2007); *DeLozier v. Sirmons,* 531 F.3d 1306, 1319 (10th Cir.

2008), *cert. denied,* 129 S. Ct. 2058 (2009).  All of the issues can be resolved on the record before me, and, therefore, an evidentiary hearing is unnecessary.  *E.g., Schriro v. Landrigan,* 550 U.S. 465, 475 (2007); *Sandoval v. Ulibarri,* 548 F.3d 902, 915-16 (10th Cir. 2008), *cert. denied,* 130 S. Ct. 133 (2009); Rule 8(a), RULES GOVERNING SECTION 2254 CASES IN THE UNITED STATES DISTRICT COURTS.  Having carefully considered the claims in light of the entire federal record and relevant law, I recommend that the petition be denied on the merits and the action with prejudice.

A note before proceeding further.  Petitioner's claims concerning his guilty plea are largely dispositive of the entire federal petition, however, the state plea and evidentiary hearings were submitted in audio format only.  Below, I transcribe the relevant portions of those and other hearings.  Because the state clerk minutes and audio players use different time formats, the time that appears in parentheses after a hearing citation is an approximation only and keyed to the state clerk minutes.  Also, this Court's copy of the state "Record Proper" is not stamped with Bates numbers, and I numbered the Court-copy pages for ease of reference.  I cite those pages but also typically describe the cited document in a parenthetical for clarity.

# I.  AEDPA Standards Of Review

## A.  Generally

As the Tenth Circuit recently reiterated, under AEDPA standards,

[i]f a claim was addressed on the merits by the state courts, we may not grant federal habeas relief on the basis of that claim unless the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.* § 2254(d)(2).  "When reviewing a state court's application of federal law, we are precluded from issuing the writ simply because we conclude in our independent judgment that the state

court applied the law erroneously or incorrectly." *McLuckie v. Abbott,* 337 F.3d 1193, 1197 (10th Cir. 2003). "Rather, we must be convinced that the application was also objectively unreasonable." *Id.* "This standard does not require our abject deference, but nonetheless prohibits us from substituting our own judgment for that of the state court." *Snow,* 474 F.3d at 696 (internal quotation marks and citation omitted).

If a claim was not resolved by the state courts on the merits and is not otherwise procedurally barred, our standard of review is more searching. That is, . . . § 2254(d)'s deferential standards of review do not apply in such circumstances . . .

*Alverson v. Workman,* 595 F.3d 1142, 1146 (10th Cir. 2010).

Clearly established Supreme Court precedent is "dispositive" of the § 2254(d)(1) analysis "only if we determine that the law is clearly established do we inquire whether the state court decision is either contrary to or an unreasonable application of that law." *Fairchild v. Workman,* 579 F.3d 1134, 1139 (10th Cir. 2009). As for whether the law is "clearly established," federal habeas "courts may no longer extract clearly established law from the general legal principles developed in factually distinct contexts." *Lambert v. Workman,* 594 F.3d 1260, 1263 (10th Cir. 2010).

[If a petitioner] has not cited, nor have we found, any Supreme Court authority clearly establishing the. . . principles at issue here[,] [u]nder the AEDPA standards set out above, that is fatal to his claim. Unless and until the Supreme Court decides [the issue] habeas relief on this basis is unavailable, and it is not the province of this court to resolve the issue . . .

*Id.*

If there is "no Supreme Court precedent establishing the [ineffectiveness] rule" that a petitioner asserts, then a federal court "retreats to the general *Strickland* standard." *Crawley v. Dinwiddie,* 584 F.3d 916, 921-22 (10th Cir. 2009) (citing *Knowles v. Mirzayance,* ___U.S. ___, ___, 129 S. Ct. 1411, 1419, *rehearing denied sub nom. In re Word,* 129 S. Ct. 2422 (2009)), *cert. denied,* 130 S. Ct. 3357 (2010). That is, Petitioner must show counsel's conduct was

constitutionally deficient and that, but for the conduct, the result of the proceeding would have been different.  Failure to make either showing defeats the claim.  *E.g., Smith v. Robbins,* 528 U.S. 259, 285-86 & n.14 (2000); *Strickland v. Washington,* 466 U.S. 668, 687 (1984).

## B.  Presumption Of Correctness

Two state habeas petitions were pending when the state district judge held his evidentiary hearing.  One was Petitioner's *pro se* petition and "amendment," which raised the plethora of claims I previously discussed in detail.  *See Record Proper* at 159-70, 243-72; *see also Doc. 14* at 2-15.  The other was an amended petition filed by the attorney appointed as state habeas counsel.  Counsel raised two claims:  (1) imposition of an aggravated sentence violated the *Apprendi* line of cases; and (2) Petitioner's  plea was involuntary because trial counsel admittedly failed to advise Petitioner that the statutorily-mandated parole term was five to twenty years.  *See Record Proper* at 207-14.[1]

The trial judge denied relief and discussed his reasoning for one claim during the evidentiary hearing.  His written findings are cursory and conclusory. They memorialize some of the findings made at the hearing and dismiss all of the *pro se* claims under a catch-all ruling stating in full that "the petitioner's other claims are without merit."  *Id.* at 321.  Regardless, the trial judge's rejection of the claims was on the merits and thus is entitled to deference under the

---

[1]  The plea agreement contained detailed information about the possible length of sentence but did not mention parole.  The original judgment inserted a term of parole to follow release, but incorrectly designated it as a two-year term.  The mistake was not discovered until after sentencing, when the State filed a motion to correct the parole term.  *See Record Proper* at 127 (judgment and sentence entered 5/16/06); *id.* at 141 (State's "Motion To Correct Illegal Sentence").  The trial judge held a hearing with the Petitioner present.  Trial counsel conceded that the lengthier parole term was mandated by statute – "we can find no grounds for objection, Your Honor, that is what it states."  *Motion Hearing 9/5/06* (audiotape; 12:15:34 PM).  Based on that concession and the mandatory language of the statute, the trial judge granted the amendment.  *See Record Proper* at 189 (order to amend judgment noting hearing held 9/5/06); *id.* at 187 (amended judgment entered 9/6/06).

above AEDPA standards.  *E.g., Sandoval,* 548 F.3d at 908-09; *compare Wilson v. Workman,* 577 F.3d 1284 (split panel decision concerning effect of Oklahoma Court of Criminal Appeals rule on whether a decision is on the "merits" for AEDPA purposes), *later decision on merits sub nom., Wackerly v. Workman,* 580 F.3d 1171 (10th Cir. 2009), *cert. denied,* 130 S. Ct. 3387 (2010).

    Factual determinations by the state court are presumed correct unless Petitioner rebuts them by "clear and convincing" evidence.  *E.g., Welch v. Workman,* 607 F.3d 674, 684 (10th Cir. 2010); 28 U.S.C. § 2254(e)(1).  The trial judge's express findings about "voluntariness," and his findings on the "historical facts" that underlie it, are entitled to a presumption of correctness.[2] Even though the trial judge did not expressly find that Petitioner's ***evidentiary hearing testimony*** was incredible, it is implicit from his rejection of the *pro se* claims and his findings about Petitioner's credibility generally.  Implicit determinations are entitled to the same presumption

---

    [2]  The trial judge made a passing reference to the "voluntariness" of the plea during the evidentiary hearing.  In response to the suggestion by habeas counsel that plea was involuntary, the trial judge stated:  "on that, I'm not going with it, because I did the plea hearing and I went through all the required portions and I said 'were there any other promises,' 'anything you didn't understand' . . . five to twenty [parole term] yeah, he didn't know."  *Evidentiary Hearing 7/15/08* (4:57:11 PM).  During the plea hearing, he made specific factual findings concerning the plea and they are reflected in the plea colloquy quoted in the text.  The trial judge's conclusions about "voluntariness" and the "historical facts" underlying a plea have long been subject to the presumption of correctness.  *E.g., Marshall v. Lonberger,* 459 U.S. 422, 431-32(1983) ("We entirely agree . . . that the governing standard as to whether a plea of guilty is voluntary for purposes of the federal Constitution is a question of federal law. . . .  But the questions of historical fact . . . with respect to [the] guilty plea, what other inferences regarding those historical facts . . . could properly draw, and related questions – are obviously questions of 'fact'" entitled to the statutory presumption); *Washington v. Workman,* 2010 WL 1645137 at *1 (10th Cir. 4/26/10) (not selected for publication in Federal Reporter) ("Mr. Washington does not provide us "clear and convincing evidence" to rebut the presumption of correctness of the OCCA's factual finding that his plea was "knowing, intelligent, and voluntary." 28 U.S.C. § 2254(e)(1)"); *Cunningham v. Diesslin,* 92 F.3d 1054, 1060 (10th Cir. 1996) (pre-AEDPA statute: "To the extent that the question of whether the defendant knowingly and voluntarily made the plea depends on findings of fact made by the state court on habeas review, these findings . . . carry a presumption of correctness.").

of correctness rules as explicit findings.[3]

# II.  Factual Background Regarding Dispositive Federal Issues

In March 1988, Petitioner entered a no contest guilty plea to multiple counts of kidnapping and criminal sexual penetration.  After serving about half of his thirty-year sentence, he was released from prison and registered as a sex offender in 2003.[4]  The kidnapping and rape at issue occurred on April 16, 2005.  *Record Proper* at 1 (criminal information dated 8/4/05).  The victim left a bar with a man identified as Petitioner and entered his truck.  Petitioner was to drive her to where her vehicle was parked, but drove her elsewhere.  She was beaten, choked, tied, bitten, and raped.  She eventually escaped, ran naked to a residence for assistance, and identified Petitioner from a photo array.  *See, e.g., id.* at 47-50 (affidavit for arrest warrant dated 5/3/05).

## A.  *Petitioner's First Interview With The Police*

When first questioned by the police, Petitioner told them that he was apprehensive because he did not want to return to prison.  He was initially reluctant to admit that he left the

---

[3]  *E.g., Jones v. Suthers*, 130 Fed. App'x 235, 240 n.1 (10th Cir.) ("The presumption of correctness of a state court's factual findings in the context of an application for writ of habeas corpus applies to implicit as well as explicit findings of fact.")(citing *Weeks v. Snyder*, 219 F.3d 245, 258 (3rd Cir.), *cert. denied,* 531 U.S. 1003 (2000)), *cert. denied,* 546 U.S. 948 (2005); *see also, e.g., Smith v. Gibson,* 197 F.3d 454, 459 (10th Cir. 1999) (citing  pre-AEDPA presumption of correctness statute and *Marshall, supra* note 2, which  in turn notes that in *Lavallee v. Delle Rose,* 410 U.S. 690, (1973), the Court "held that because it was clear under the applicable federal law that the trial court would have granted the relief sought by the defendant had it believed the defendant's testimony, its failure to grant relief was tantamount to an express finding against the credibility of the defendant."), *cert. denied,* 531 U.S. 839 (2000).

[4]  State docket sheets are publicly available online.  *See* www2.nmcourts.gov/caselookup; *State v. Boulden,* D-202-CR-8743950 (docket sheet entry 3/2/88 for  "NC/GUILTY PLEA" and 5/18/88 entry for "sentence total of 30 yrs").  New Mexico sex offender information is also available online.  *See* www.nmjustice.net/framed/?url=www.nmsexoffender.dps.state.nm.us.  It shows Petitioner's first registration date as February 2003.

bar with a woman, or that she entered his truck.  *Boulden Interview Transcript 4/20/05* at 27-33.[5]

Eventually, however, he revealed that he did have sex with the victim.  He told police that their

encounter was entirely consensual and that the victim instigated rough sex and bondage,

purportedly accounting for injuries to both of them.  He described the woman's injuries and

showed his own to the officers.  He also told them that, after they finished, the victim  "freaked

out" and ran away naked, so he threw her clothing and other belongings out the truck's window

and drove away.  *See id.* at 34-38, 44-57.

The interview with Agents Lucero and Sandy reflects a pattern of similar behavior that

would be repeated in varying degrees during the subsequent court proceedings.  That is,

Petitioner's apprehension and nervousness.

| | |
|---|---|
| Sandy: | Because really, what, what's happening here is if you're, if you're here denying, denying, denying, saying nothing happened, nothing happened, nothing happened, and DNA samples are collected and what's it gonna look like.  I mean really, be honest with yourself, cuz you deny it, we collect DNA samples and she did give you oral sex and your, your DNA standards are on her body, which they're gonna be, how you're gonna get yourself out of that? |
| Boulden: | There's no (inaudible) charged with raping.  (Inaudible) kill you. |
| Sandy: | Wait a, hold on, wait a, whoa, whoa, whoa, we, hold on – |
| Boulden: | (Inaudible). |
| Sandy: | – hold on. |
| Lucero: | No, he doesn't have weapons.  I checked. |
| Sandy: | Ok, go ahead and check him again.  (Inaudible).  What, what, what are we gonna do here?  I mean, what are (inaudible). |
| Lucero: | Ok, I want to see your private parts. |
| Boulden: | You're right, and uh – |
| Lucero: | What do you mean, I'm right? |
| Boulden: | I'm scared of this shit. |

---

[5]  The state record is a bit confusing.  The exhibit list filed after the state evidentiary hearing does not list all of the exhibits discussed during the hearing.  It also shows Exhibit "2b" as an "audio cassette" recording of Petitioner's first police interview on April 20, 2005.  However, as reflected by the audio recording of the hearing, the trial judge was looking at a transcript.  In the submissions for the federal record, Exhibit "2b" to Doc. 27 is indeed a transcript of that interview.  *See Record Proper* at 305-19 (clerk minutes and exhibit list for state postconviction evidentiary hearing held 7/15/08).

Lucero:     Ok, (inaudible).

Boulden:    (Inaudible) and went crazy and then started hitting and wanted to tell me she
            liked rough sex and shit, and I was with one girl here about two weeks ago
            who was, weird kind of like that, and I didn't know what to expect.  You
            know, and she, she punched me and said, you know, "Get rough with me,"
            weird shit, and I didn't, you know, and just freaking me out.  I've got
            bruises from her, (inaudible) ok.  I've got bruises from her, the stuff she did.
            Uh –

Lucero:     Is that a bite mark?

Boulden:    – uh, part bite, part hit uh, teeth right there.

Sandy:      (Inaudible) another mark (inaudible)?

Boulden:    (Inaudible) scratch (inaudible).

Sandy:      Well, we're going to have to document that, so that's (inaudible) important
            to our investigation.

Boulden:    She, ok, you know I'm scared of this.

Sandy:      I know (inaudible).

Boulden:    (Inaudible) you're gonna charge me with rape, man.

Sandy:      (Inaudible) ok.

Boulden:    And it was, it was consensual.

Sandy:      Alright.

Boulden:    (Inaudible) and she gets this weird shit, you know, about, you know, "Tie
            me up," and crap and then, and then, I don't know, she come through
            (inaudible), she jumps out of the truck, takes off.

Sandy:      Ok, alright, well let's do this –

Boulden:    and, and lets her clothes (inaudible).  I throw them out.

Sandy:      (Inaudible) ok, put your pants on.  Put your pants on and let's, lets go
            through it –

Boulden:    Because I –

Sandy:      – from the beginning to the end.  Ok, we wanna go through it from the
            beginning to the end ok, because it's, this is your opportunity to get your
            story out, ok.  This is where you're gonna help yourself, ok.  Understand
            me?  You need to chill out.  Do you need some more water.  Do you need
            some more water?

Boulden:    Yes.

Sandy:      Alright, you need to get your pants done up.

Boulden:    I didn't rape her, man.

Sandy:      Ok, ok.

Boulden:    I –

Sandy:      You know what, calm down, calm down, alright?  (Inaudible).

Boulden:    – and I've worked real hard to get my life together and some weird shit like
            this comes down on me.  I don't need it (crying).

Sandy:      Uh, nobody needs it.  Nobody needs it, but you, I want you to take an
            opportunity, ok, and I want you to listen to me, and while you're listening to
            me, you need to chill out, alright?  Take a deep breath.

Boulden:    (deep breath, cough).

| | |
|---|---|
| Sandy: | Attaboy, let's try another one, ok. |
| Boulden: | (deep breath). |
| Sandy: | Alright, let's bring it down. |
| Boulden: | (chuckles) (deep breath). |
| Sandy: | Attaboy, alright now, ok, alright, ok, hey, calm down. Let's forget about the word rape for right now, ok. Let's get it completely out, ok. |
| Boulden: | I just did 15 years (inaudible). |
| Sandy: | Ok, ok, that's cool, but what's done is done. We're not talking about what you've done, ok. Let's bring it down. |
| Boulden: | It's always the guy that's, that – |
| Sandy: | (Inaudible) you're right, you're right, you're right. |
| Boulden: | (Inaudible) fault, (inaudible) charge. |

*Id.* at 38-40 (parentheticals original, but certain transcription grammar, spelling, and punctuation edited for clarity).

### B.  *Plea Colloquy*

Likewise, as is audible on the tape recording, Petitioner's voice sometimes quavered during the plea colloquy.  Though I have omitted the trial judge's "ums" and such below for clarity, I note that even though Petitioner's voice quavered, he did not hesitate in his responses.

| | |
|---|---|
| Judge: | [after reading through plea agreement]  All right, I'm prepared to approve the plea and disposition agreement.   I have some questions for you, Mr. Boulden.  You can stay seated until I ask you to stand, alright? |
| Defendant: | OK. |
| Judge: | First of all, I want to know – do you understand the charges that are set forth in the criminal information against you? |
| Defendant: | Yes, Sir. |
| Judge: | All right.  And do understand that the range of possible sentences for the offenses charged run from probation to a maximum of three life sentences plus twenty-one years imprisonment and a fine of twenty-thousand dollars?  That's the original criminal information, not your plea agreement.  Do you understand that? |
| Defendant: | Yes, Sir. |
| Judge: | All right.  What you've agreed to is – agreed to plead out to a first-degree felony which is a basic sentence of eighteen years and/or fifteen-thousand-dollar fine and a third-degree felony not resulting in death, a basic sentence of three years and/or a five-thousand-dollar fine.  Plus, your sentence can be enhanced by one year as to each count as a result of your admission to being a habitual offender resulting in a total exposure of thirty years imprisonment if the sentences are aggravated.  And that's something that the prosecutor is |

|  |  |
|---|---|
| | placing in here, presumably to seek aggravation of the sentences.  Is that right, Mr. Pickering? |
| Prosecutor: | Yes, sir, and if we do seek those we'll file written notice to put counsel on notice and the court. |
| Judge: | All right.  But at least the prosecutor's office has begun the process, because you are on notice that's the maximum exposure that you're facing in this case.  Do you understand that, sir. |
| Defendant: | Yes, sir. |
| Judge: | I'm going to read to you these different constitutional rights that you're giving up by pleading – let's see – what we have – no contest – you're agreeing to plead no contest. [litany of rights recited]  Do you understand these constitutional rights? |
| Defendant: | Yes, sir. |
| Judge: | And, you understand that you're giving up these constitutional rights by entering into this plea agreement? |
| Defendant: | Yes, sir. |
| Judge: | And you still want to go forward and waive these constitutional rights? |
| Defendant: | Yes, sir. |
| Judge: | All right.  The Court finds that defendant wishes to give up the constitutional rights of which he has been advised.  And, let's hear from you Mr. Pickering, on the basis in fact for the pleas on the first-degree felony and the third-degree felony. |
| Prosecutor: | Your, Honor, if this matter went to trial, there would be testimony that on April 16, 2005, in Moriarty, New Mexico, which is in Torrance County, that the Defendant met the victim [name omitted] in a local bar, that she got into his pickup truck ostensibly to get a ride to her vehicle, that, in fact, he did not take her to her vehicle, he took her out to the boondocks against her will and committed – or – had her commit an act of fellatio on him at that time. |
| Judge: | All right, and that's for both charges? |
| Prosecutor: | Yes, sir. |
| Judge: | And the one is what – kidnapping? |
| Prosecutor: | One is kidnapping and one is sexual criminal penetration in the third-degree. |
| Judge: | Very well,  And Mr. Bennet, is that a sufficient factual basis? |
| DCounsel: | Yes, Your Honor, that is a sufficient factual basis. |
| Judge: | All right, Mr. Boulden, would you please stand?  In regards to the first-degree felony and the third-degree felony – the kidnapping and the criminal sexual penetration, how do you plead? |
| Defendant: | No contest, sir. |
| Judge: | Very well, please be seated.  The Court finds there exists a basis in fact for believing Defendant committed the offenses charged, and that an independent record for such factual basis has been made.  The Court further finds that the Defendant and the prosecutor have entered into the plea agreement.  Did you read this plea and disposition agreement, Mr. Boulden, before you signed it? |

| | |
|---|---|
| Defendant: | Yes, sir. |
| Judge: | And you know how to read English? |
| Defendant: | Yes. |
| Judge: | All right.  Are you on any kinds of medications – take any drugs or alcohol in the past 24-hours? |
| Defendant: | Yes, sir, I did. |
| Judge: | What did you take? |
| Defendant: | They have me on psych medication every night – Elavil and Flexeril as well as a suppository to offset the effects of Elavil so I can have bowel movements. |
| Judge: | Does that affect your ability to think or remember? |
| Defendant: | No, sir. |
| Judge: | All right.  So you know what's going on today? |
| Defendant: | Yes, sir. |
| Judge: | All right.  And you understand the terms of your plea agreement? |
| Defendant: | Yes, sir. |
| Judge: | And do you consent to its terms? |
| Defendant: | Yes, sir. |
| Judge: | The Court finds that the Defendant understands and consents to the terms of the plea agreement to which he has entered.  Did anybody force you to sign this agreement? |
| Defendant: | No, sir. |
| Judge: | Did anybody threaten you? |
| Defendant: | No, sir. |
| Judge: | Did anybody make you promises other than what's contained in this plea agreement? |
| Defendant: | No, sir – promise – no, sir. |
| Judge: | The Court finds that the plea is voluntary, not the result of force, threats, or promises other than the plea agreement.  And, the Court further finds under the circumstances it is reasonable that the Defendant plead no contest.  Are you an American citizen? |
| Defendant: | Yes, sir. |
| Judge: | What state were you born in? |
| Defendant: | State? |
| Judge: | Yes. |
| Defendant: | New Mexico. |
| Judge: | If you were not an American citizen, this conviction could have an effect on your immigration or naturalization status.  On the basis of these findings, I conclude that the Defendant knowingly, voluntarily, and intelligently pleads no contest to the above charges and accept such pleas – such plea.  How do you wish to proceed toward sentencing, Mr. Pickering? |
| Prosecutor: | I believe we'd like to get a presentence report.  However, as long as we're on the record, I'd also like to make sure there is an admission that he's one in the same person that was convicted in the Second Judicial District of New Mexico in CR43950 on March 2, 1988, of the felony offenses of three |

|          |                                                                                     |
|----------|-------------------------------------------------------------------------------------|
|          | counts of criminal sexual penetration in the second degree, two counts of           |
|          | kidnapping, and one count of aggravated battery, committed on 9/4 of '87             |
|          | and 9/11 of '87.                                                                     |
| Judge:   | Well, let me swear him in first because I want to make sure that that's –            |
| Prosecutor: | OK                                                                               |
| Judge:   | – a sworn testimony.  Mr. Boulden would you raise your hand?  Right hand,            |
|          | yes.  Do you swear or affirm that the testimony you'll give herein will be           |
|          | the truth, the whole truth, and nothing but the truth under penalty of law?          |
| Defendant: | Yes, I do.                                                                         |
| Judge:   | All right.  You heard the request for the admission by the prosecutor.  Is that      |
|          | – are you the same person?                                                           |
| Defendant: | Yes, sir.                                                                          |
| Judge:   | All right.  Is that sufficient for you, Mr. –                                        |
| Prosecutor: | yes, sir                                                                          |
| Judge:   | – Pickering – ?                                                                      |
| Prosecutor: | thank you.                                                                        |
| Judge:   | All right.  Anything, anything further?                                              |
| Prosecutor: | No, sir.                                                                          |
| Judge:   | All right.  What about you, Mr. Bennett?  What [are] your thoughts in terms          |
|          | of preparing for sentencing?                                                         |
| DCounsel: | My client would like to make a statement apologizing to the Court and other          |
|          | parties.                                                                             |
| Judge:   | Well, we can get into that in the sentencing stage –                                 |
| DCounsel: | yes, Your Honor.                                                                     |
| Judge:   | – you're entitled to do that and we'll do that.  And, of course, we'll hear          |
|          | from the – if the victim so chooses, or the victim can make a statement              |
|          | writing – but we'll get to that in the sentencing phase.  I just wanted to know      |
|          | if you wanted anything beyond the presentence report . . .                           |

*Plea Hearing 2/7/06* (3:25:58 PM – 3:33:46 PM).

## C. *Sentencing Hearing*

At sentencing, one of the prosecutor's witnesses was the nurse who attended the victim

following the rape.  She testified to the victim's wounds depicted in several photographs.  The

defense did not put on witnesses out of  "respect" for the victim.  *Sentencing Hearing 5/2/06*

(4:00:38 PM).  Petitioner did not make a statement before sentence was imposed.  He had

submitted a letter to the district judge, but I have been unable to locate it in the federal materials.

*See id.* (4:00:38 PM – 4:09:02 PM).  From the trial judge's discussion during the hearing, it

appears that the letter explained the same sort of stressful events in Petitioner's life immediately

preceding the rape that Petitioner describes in the federal petition.  *See Doc. 1-3* at 8 (deaths in

the family, elderly dependent parent, fiance's miscarriage).

As with his statements to the police and at during his plea, Petitioner was nervous.  He

and the district judge discussed this before the proceedings began.

| | |
|---|---|
| Judge: | Very, well.  I know you're scared, Mr. Boulden, and I read what you had to say.  And, if you feel like you're going to have any kind of difficulties, then let us know.  Alright?  You can tell your attorney or you can tell me, and then we can take a break and you can try to compose yourself on it.  OK? |
| Defendant: | Yeah, well.  I want to apologize for breaking down last time, bringing the ambulance here – well, we messed up your court.  I'm sorry. |
| Judge: | No, that's OK.  That was just a physical reaction.  And you didn't do it – it wasn't any choice on your part.  I didn't think that you were faking it or anything like that.  It's very stressful for everybody here . . . victim is here . . . she's just as traumatized and more so, than Mr. Boulden.  So, however you feel, she feels it a hundred times more. |
| Defendant: | Except for very shameful on my part. |
| Judge: | I understand that, she doesn't have the shame . . . |

*Id.* (3:10:02 PM – 3:11:10 PM).  And, during his apology after sentence had been imposed,

Petitioner's voice was full of emotion, and he may have been crying at points.

| | |
|---|---|
| DCounsel: | My client would like to apologize on the record, Your Honor. |
| Defendant: | Excuse me, Your Honor, this is – not for you, it's for her –  I wanted to apologize to [the victim] and tell her my shame.  I wish she hadn't left because I wanted to tell her – |
| Judge: | She's entitled to leave.  So, it'll be on the record. |
| Defendant: | I also wanted to let her know that a Bible was sent to me last September – and I've been studying it – and I've been praying for her, and I wanted to ask her forgiveness.  I tried to seek what help I could in prisons.  We get cast to the side unless we try to help ourselves, which I was trying to do.  God says it in his word there, that he'll help me.  He can make something out of my life.  Even if society wants to give up on me, God doesn't.  I'm ashamed for the things – what came – what happened.  I keep asking myself how my life had been destroyed so much that I would be in a wicked, vile state like that, ever.  I just want to ask all these people who have had to be involved in this case – ask their forgiveness.  I wish this had never ever happened.  I'll keep praying for [the victim].  Thank you. |

*Id.* (4:29:32 PM - 4:32:34 PM).

### D.  State Evidentiary Hearing

At the state evidentiary hearing Petitioner testified, among other things, that had he known because of the parole term he was facing "a possible additional 17 years in the state penitentiary" beyond what he was offered in the plea agreement, he would have gone to trial – "Shucks, I wouldn't have taken that [plea agreement].  We were planning on going to trial anyway.  There wasn't no talk about plea agreement."  *Evidentiary Hearing 7/15/08* (4:15:06 PM).  He also wanted the trial judge to know about his "incompetency at the time of signing the plea agreement."  *Id.* (4:15:02 PM – 4:22:57 PM).

The plea agreement was signed by the prosecutor on January 3, 2006, by Petitioner on January 23, 2006, and by defense counsel on February 7, 2006, the same day as the plea hearing.  *Record Proper* at 100.   Petitioner testified that, after he suffered the "mental breakdown" alluded to during the sentencing colloquy, he was taken back to prison, put in a suicide cell, and "ordered" to sign the plea agreement by a corrections officer.  He further testified that he told his attorney about the coercion a week after signing the plea agreement, and his attorney said: "Don't worry about it, I'll take care of it."  *Evidentiary Hearing 7/15/08* (4:09:40 PM – 4:15:06 PM).  Petitioner said he had no memory of what transpired thereafter until he found himself at the sentencing hearing – "the next thing I'm consciously aware of is being sentenced on May 2, [2006], but my new attorney, my habeas corpus attorney said we had a hearing either February 6th or 7th which I really have no conscious memory of."  *Id.*

Petitioner faulted his attorney for not raising the issue of "coercion" by the guard while he was vulnerable – "the ineffectiveness that I see is that my lawyer . . . [did] not to make this

Court aware of the fact of the circumventing – the denial of counsel at a critical stage . . . nor

was I ever advised by counsel that I could have moved to have that plea withdrawn." *Id.*

(4:20:02 PM – 4:22:01 PM).   He further faulted his attorney for not having sought a competency

hearing:

> nor did he move for having a competency hearing. . . .  This Honorable Court
> knew that I was on psych meds, knew that I had this mental breakdown in the
> courthouse holding cell.  He knew that I was in a suicide cell at the jail, and
> [counsel] never requested a competency hearing [because he] was trying to close
> shop . . .

*Id.* (4:22:57 PM).

The trial judge expressly commented on Petitioner's credibility.  During the course of

deciding whether Petitioner would have been convicted if he had gone to trial, he said:  "I've

dealt with Mr. Boulden on a number of occasions.  I don't think he makes a credible witness."

*Id.*  (4:46:48 PM).  Later, the trial judge reviewed the statements Petitioner made to the officers

during the first interview, particularly Boulden's contention that the sexual encounter was

consensual and directed by the victim.  In response, the trial judge commented:  "What I know of

this case and what I know of Mr. Boulden – that is make believe, that's what we've got here."

*Id.*  (5:01:49 PM).

The only instance of ineffective assistance of trial counsel found by the court was the one

raised by habeas counsel and conceded by the prosecutor – that trial counsel did not inform

Petitioner he faced a parole term of five to twenty-five years.  *See, e.g., Record Proper* at 211-

13 (counseled state habeas petition); *id.* at 284 (State's concession that trial counsel "did not

advise the Petitioner of the correct parole period" and that trial counsel's "performance was

deficient").  The court then properly proceeded to address the second *Stickland*  prong as to

whether that ineffective assistance prejudiced Petitioner.

The trial judge found that Petitioner was not at all inclined to go to trial.  As for the question whether "reasonable probability that [Petitioner] would have chosen to go to trial instead of pleading, on this one, no contest," the judge made these findings on the record:

> that's a fact-specific question for the Defendant here – and I will tell you – is that I was there, and none of you others were here.  In terms of the demeanor of the Defendant, every time he came to court he was frightened to death.  He was not wanting to go to trial.  He was frightened of trial.  He did not want it. . . .  I do not believe that [Petitioner] would have said:  'Let's go to trial' [if he had known the parole period was five to twenty-five years]. . . looking at [the plea offer] how pared down it was – instead of 135 years, he's facing 27 years . . .  [Petitioner] would have accepted [the plea offered] for this reason – it was no additional prison time. . . .  Mr. Boulden . . . was desperate not to go to trial.  He wanted to have a chance to be out in the streets at some point in his life, and he got that chance. . . .  the rest of his natural life.  That's what he was facing because Mr. Boulden is, at this stage, and from everything that I've seen, he is a committed rapist.  That's what Mr. Boulden does.  Alright and so he got . . .  a sweetheart deal and he got away with it in that the terms he didn't have to spend the rest of his life in prison.  He'll get a chance to come out.  [Petitioner] wasn't gonna change his mind and the State's case was exceedingly strong . . .

*Evidentiary Hearing 7/15/08* (5:10:57 PM – 5:13:09 PM); *see also Record Proper* at 320-21 (written decision entered 8/8/08, finding Petitioner was "facing a total possible sentence . . . of three life sentences . . . plus sixty-six . . . years;" received "twenty-seven years of incarceration;" the states evidence "would have been overwhelming'" Petitioner "showed every indication of a strong willingness to avoid trial;" and that "there is not a reasonable probability that but for [trial counsel's ineffectiveness in not explaining the period of parole before entry of the plea] the result of the case would have different and that [Petitioner] would have elected to go to trial.").

## III.   Analysis

Under long and clearly-established Supreme Court precedent, for a constitutionally-valid plea, a defendant must have notice of the elements of the charge, and the plea must represent an intelligent and voluntary choice of alternatives open to him or her rather than the product of

coercion.  *See, e.g., Bousley v. United States,* 523 U.S. 614, 618 (1998); *Hill v. Lockhart,* 474

U.S. 52, 56 (1985); *Henderson v. Morgan,* 426 U.S. 637, 644-45 (1976); *North Carolina v.*

*Alford*, 400 U.S. 25, 31 (1970); *Brady v. United States,* 397 U.S. 742, 7748-50 (1970); *Boykin v.*

*Alabama,* 395 U.S. 238, 242 (1969).  The fact that Petitioner entered a no contest plea does not

change the constitutional inquiry.[6]  During a plea hearing, representations made by the

defendant, his lawyer, and the prosecutor, as well as any findings made by the judge accepting

the plea, "constitute a formidable barrier in any subsequent collateral proceedings.  Solemn

declarations in open court carry a strong presumption of verity." *Blackledge v. Allison,* 431 U.S.

63, 73-74 (1977).  Where the basis for challenging a plea as involuntary rests on a claim of

---

[6]  The clearest expression of this principle is from an Eleventh Circuit decision.  "The fundamental constitutional consideration when a petitioner challenges his plea is whether it was voluntary.  The rule is the same for pleas of guilty or nolo contendere." *Wallace v. Turner,* 695 F.2d 545, 547 -548 (11th Cir. 1982), *rehearing denied,* 706 F.2d 318 (11th Cir. 1983).  Tenth Circuit decisions recognize the principle where the "legal effect of a nolo contendere plea . . . is the same as that of a guilty plea," and that is the case in New Mexico.  *Braun v. Ward,* 190 F.3d 1181, 1188, n.6 (10th Cir. 1999), *cert. denied,* 190 F.3d 1181 (10th Cir. 1999); *see also Thomas v. Kerby,* 44 F.3d 884, 888, n.4 (10th Cir. 1995) (unpublished) (in New Mexico, a no contest or nolo contendere plea is comparable to a confession of guilt and has the same legal consequences as a guilty plea); *Candelaria v. LeMaster,* 1999 WL 1243091 at ** 5-6 (10th Cir. 1999) (application of same standards for voluntariness to New Mexico no contest plea), *cert. denied,* 529 U.S. 1115 (2000).

What is not well-settled is whether a factual basis for such pleas are constitutionally required – an issue not present in this case because, as reflected in the plea colloquy above, the trial judge did require the factual basis before accepting the plea.  *See Green v. Koerner,* 312 Fed. App'x 105, 108-09 & n.1 (10th Cir. 2009) (rejecting "contention that the state court lacked a factual basis to support her plea does not, by itself, present a basis to invalidate her plea in a federal habeas corpus action," because the state court found that defendant did not make a claim of innocence, but noting that "it is not settled whether a state court must ascertain a factual basis before accepting a plea of no contest"); *see also Alford,* 400 U.S. at 37 ("while most pleas of guilty consist of both a waiver of trial and an express admission of guilt, the latter element is not a constitutional requisite . . . .  An individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime.  Nor can we perceive any material difference between a plea that refuses to admit commission of the criminal act and a plea containing a protestation of innocence when, as in the instant case, a defendant intelligently concludes that his interests require entry of a guilty plea and the record before the judge contains strong evidence of actual guilt. . . .  Because of the overwhelming evidence against him, a trial was precisely what neither Alford nor his attorney desired.").

ineffective assistance of counsel, a modified version of the *Strickland* standard applies.  To

establish prejudice, Petitioner must show that "there is a reasonable probability that, but for

counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."

*Hill*, 474 U.S. at 59.  If the prejudice prong is not met, it is unnecessary to discuss the other

prong.  *See id.* at 60.

## A.  Parole Term

Petitioner's claim that his plea is involuntary because he was unaware of the correct

parole term fails on both *Strickland* prongs.  Although the trial judge assumed trial counsel's

failure to advise Petitioner about the correct parole term was deficient conduct, Supreme Court

precedent is not clearly established in that regard for federal habeas purposes.  Following the

Supreme Court's comment in *Hill* that it has "never held that the United States Constitution

requires the State to furnish a defendant with information about parole eligibility in order for the

defendant's plea of guilty to be voluntary," *id.* at 56, a number of courts, including the Tenth

Circuit, have held that certain parole consequences are "collateral" and "therefore a state court's

failure to inform the defendant of these consequences does not render a guilty plea unknowing or

involuntary, *Perkis v. Sirmons,* 201 Fed. App'x 648, 652 (10th Cir. 2006).

This year, the Supreme Court held that an attorney's conduct is deficient under the first

*Strickland* prong if he or she fails to inform a criminal defendant about the deportation

consequences of a guilty plea.  *Padilla v. Kentucky,* ___ U.S. ___, 130 S. Ct. 1473, 1483

(3/31/2010).  There the state court used the "collateral/direct consequences" distinction in

dismissing the *Strickland* claim without an evidentiary hearing.  *Id.* at 1481.  The Supreme

Court  majority noted that it has "never applied a distinction between direct and collateral

consequences to define the scope of constitutionally 'reasonable professional assistance' required under *Strickland*." *Id.* It also doubted whether the distinction is even appropriate, but did not consider the issue "because of the unique nature of deportation." *Id.* The concurring and dissenting opinions highlight that there is no clearly established Supreme Court precedent on the subject.[7] As such, even if this Court agreed with the trial judge that counsel was ineffective, AEDPA precludes this court from granting habeas relief because the law is not clearly established concerning the first *Strickland* prong and Petitioner's claim. With no habeas relief available on one of the two requisite prongs, Petitioner cannot prevail.

Alternatively, the trial judge held that Petitioner could not meet his burden of demonstrating that, but for the erroneous advice about the parole term, Petitioner would have gone to trial. The trial judge identified the proper *Strickland* prejudice standard for pleas, and therefore did not make base his decision on a legal principle that is "contary to" clearly established Supreme Court precedent. And, no Supreme Court precedent clearly establishes that a habeas petitioner's mere assertion he would have opted for trial is sufficient to satisfy the prejudice prong. Long-settled Tenth Circuit authority holds otherwise. *E.g., Miller v. Champion,* 262 F.3d 1066, 1072 (10ᵗʰ Cir. 2001), *cert. denied,* 534 U.S. 1140 (2002); *United States v. Gordon,* 4 F.3d 1567, 1571 (10ᵗʰ Cir. 1993), *cert. denied,* 510 U.S. 1184 (1994). Instead, the court is to look "to the factual circumstances surrounding the plea to determine

---

[7] Justice Alito concurred in the judgment but filed a separate opinion where he was of the opinion that *Hill* "expressly and unambiguously refused to decide whether criminal defense counsel must avoid misinforming his or her client as to one consequence of a criminal conviction (parole eligibility), [and] plainly provides no support whatsoever for the proposition that counsel must affirmatively advise his or her client as to another collateral consequence (removal)." *Padilla,* 130 S. Ct. at 1492. Justice Scalia's dissent indicates that the "constitutionally required advice regarding guilty please [are] those matters germane to the criminal prosecution  [including] the sentence that the plea will produce," *id.* at 1495, and he also noted that the Court has "indicated that awareness of 'direct consequences' suffices for the validity of a guilty plea,'" *id.* at 1496, n.1  (quoting *Brady,* 397 U.S. at 755).

whether [petitioner] would have proceeded to trial." *United States v. Clingman*, 288 F.3d 1183, 1186 (10th Cir. 2002) (internal quotations and citation to *Miller* omitted). "Specifically, while defendant is not required to prove a reasonable probability that, but for counsel's mistakes, he would have prevailed at trial, the assessment of whether he would have changed his plea depends in large part on a prediction of whether the outcome of the district court proceedings would have been different if his counsel had not committed the alleged errors." *Id.* (citing *Miller*).

The trial judge conducted this sort of analysis by considering different circumstances, and emphasizing the unlikelihood of a defense verdict at trial. He found that a guilty verdict was all but assured given the strength of the evidence against Petitioner. Based on his first-hand observation of Petitioner over several hearings, he concluded Petitioner's nervousness was indicative of not wanting to go to trial. He further found that, given the virtual certainty of a verdict of guilty, Petitioner would not have gambled a long but certain sentence that afforded him a chance to live outside of prison for a "coffin" sentence, if he had known that he would be on parole from five to twenty years after his release.

To the extent that the trial judge made this decision solely as a matter of fact – by dismissing Petitioner's testimony that he would have gone to trial as incredible – Petitioner has not set forth any "clear and convincing" evidence to circumvent the presumption of correctness. The trial judge's decision is also not an unreasonable application *Strickland's* second prong to the historical facts found he found, which also are not contradicted by clear and convincing evidence. Thus, even if Petitioner could prevail on the *Strickland* "deficiency" prong, under AEDPA standards he cannot prevail on the prejudice prong. Accordingly, I recommend that this claim be dismissed.

## B.  Denial Of Counsel At A "Critical Stage" & Coercion

There is no dispute about the timing of the plea negotiations, the signing of the plea, and the plea hearing.  The plea negotiations that culminated in the written offer took place with Petitioner's prior trial attorney.  The original offer expired in early December 2005.  At the January 3, 2006,  pretrial conference, Petitioner had a new attorney.  The prosecutor therefore agreed to extend the plea offer until January 15, 2006.  Although Petitioner did not sign the written plea agreement until January 23, 2006, the State raised no objection to the late acceptance, thereby implicitly extending the offer for a longer period.  *See Pretrial Conference Hearing 1/3/06* ("counter" 429, 845); *see also Record Proper* at 100.  The plea hearing took place on February 7, 2006.  Petitioner claims that he was denied counsel at a "critical stage" of the proceedings and that his plea was "coerced" because the prison transport officer forced him to sign the plea agreement while he was in a suicide cell on "psych meds."

Under the Supreme Court's decision in *Cronic,* if counsel is "totally" absent during a "critical stage of the proceeding," then a habeas petitioner has established a Sixth Amendment violation and is not required to show of prejudice.  *United States v. Cronic,* 466 U.S. 648, 654, 659 (1984); *see also, e.g., Wright v. Van Patten,* 552 U.S. 120, 124-25 (2008) (per curiam).  The Supreme Court has expressly and unanimously held that the "plea hearing qualifies as a 'critical stage.'"  *Iowa v. Tovar,* 514 U.S. 77, 87 (2004).  However, there is no clearly established decision that holds the moment of physically signing the plea agreement is a "critical stage."[8]  In

---

[8]  A Tenth Circuit decision refers to the "plea bargaining process," the "entry of the guilty plea," and "pretrial plea negotiations" as "critical stages."  *Williams v. Jones,* 571 F.3d 1086, 1090-91 (10th Cir.), *rehearing denied en banc,* 583 F.3d 1254 (10th Cir. 2009), *cert. denied,* 130 S. Ct. 3385 (2010).  There the attorney's ineffectiveness consisted of refusing to accede to the client's wish to accept the plea offered, and threatening to withdraw from the case if the client insisted on accepting the plea.  *Id.* at 1088.  The case is distinguishable.  Most importantly, *Williams* applied the *Strickland* analysis, not *Cronic.  Id.*

fact, the Court recently noted in a *per curiam* decision that there is no clearly established precedent requiring counsel's physical presence in the courtroom ***during*** the plea hearing, and thus remanded the case for consideration whether counsel appearing by telephone violated *Strickland,* not *Cronic. See Wright,* 552 U.S. at 125 ("No decision of this Court, however, squarely addresses the issue in this case . . . or clearly establishes that *Cronic* should replace *Strickland* in this novel factual context. Our precedents do not clearly hold that counsel's participation by speaker phone should be treated as a 'complete denial of counsel,' on par with total absence."). Accordingly, I reject the claim that Petitioner's plea was involuntary for the mere reason that he signed the agreement without his attorney present.

When questioned in detail by the trial judge at the plea hearing, Petitioner responded that: he understood the charges and the penalty he was facing; he understood the constitutional rights he was waiving by pleading guilty; he had read and understood the agreement before signing it; the drugs he was taking did not effect his ability to think, remember, or understand the proceedings; no one was forcing him to plead guilty or had made extraneous promises; and he wanted to go forward with the plea. Indeed, Petitioner was prepared to, and asked if he could, make his apology to the victim and the Court right then. The trial judge found all of the above "historical" facts to be true and plainly did not believe Petitioner's evidentiary hearing testimony that he had no "conscious" memory of the plea hearing. Petitioner has not come forward with any clear and convincing evidence to evade the effect of this implicit credibility finding.

---

at 1091 ("Mr. Williams established deficient performance and prejudice."). Also, even though the decision indicates that "effective assistance is guaranteed for the whole plea process," *id.* at 1092, the attorney's conduct in *Williams* did not turn on ***when*** the attorney's conduct occurred. Instead, the key facts in *Williams* were that counsel interfered with the state's plea offer by effectively nullifying the plea option, and insisted on conducting a trial that had "disastrous" consequences for the client, *id.* at 1091-92. Here, counsel did not interfere with the plea offer and Petitioner was not prejudiced.

Even in the absence of any credibility finding by the trial judge, Petitioner's claim of involuntariness due to coercion fails. The momentous decision to plead guilty is Petitioner's alone. *E.g., Florida v. Nixon,* 543 U.S. 175, 187-88 (2004). Petitioner's evident post-plea regrets are insufficient to countermand the "strong presumption of verity" that attached to the "solemn declarations" he made during the plea proceeding. *Blackledge,* 431 U.S. at 74. Any deficiency on the part of his attorney concerning alleged coercion by the transport officer or any alleged "coercion" at the time of signing was obviated by Petitioner's statements during the plea hearing about a complete absence of coercion and desire to proceed with the plea. *E.g., Laycock v. New Mexico,* 880 F.2d 1184, 1186 (10th Cir. 1989); *Worthen v. Meachum,* 842 F.2d 1179, 1184 (10th Cir. 1988), *overruled on other grounds, Coleman v. Thompson,* 501 U.S. 722 (1991).[9]

## C. Competency

Petitioner also contends that he was temporarily mentally incompetent to enter a plea due to the "psych meds" he was taking. The test for competency to enter a plea is identical to competency to stand trial – "whether [defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." *Allen v. Mullin,* 368 F.3d 1220, 1238-39 (10th Cir. 2004) (internal quotations and citations to *Dusky v. United States,* 362 U.S. 402

---

[9] *See also, e.g., Bradshaw v. Stumpf,* 545 U.S. 175, 186 (2005) ("in evaluating the validity of Stumpf's plea, we are reluctant to accord much weight to his post hoc reevaluation of the wisdom of the bargain."); *Fields v. Gibson,* 277 F.3d 1203, 1214 (10th Cir. 2002) ("This colloquy between a judge and a defendant before accepting a guilty plea is not pro forma and without legal significance. Rather, it is an important safeguard that protects defendants from incompetent counsel or misunderstandings."), *cert. denied sub nom. Fields v Mullin,* 537 U.S. 1023 (2002); *United States v. Hall,* 2010 WL 1610310 at **1-2 (6th Cir. 4/22/10) (" Hall did not raise [his coercion] objection during his plea colloquy with the district court," but did tell the district judge that the plea was "involuntary" because he did not "want to be doing this;" Sixth Circuit held that defendant's "theory of coercion instead ultimately rests on the reality that his conduct forced him to a difficult choice between two unattractive options: going to trial or pleading guilty. That, however, is not a cognizable theory of coercion."), *petition for cert. filed 6/15/10.*

(1960) and *Godinez v. Moran,* 509 U.S. 389 (1993) omitted), *cert. denied,* 543 U.S. 1156 (2005).

A "procedural" competency claim "is based upon a trial court's alleged failure to hold a

competency hearing" and requires Petitioner to show that "a reasonable judge should have

doubted'' his competency. *Id.* at 1239.  This is an objective standard.  *Id.*  Assessment of the

claim requires considering all of the circumstances, based on the evidence available to the trial

judge.  *See id.*

At the plea hearing, Petitioner told the trial judge that he was taking Elavil and Flexeril.  I

note that these drugs are an antidepressant and a muscle relaxer, respectively.  *See*

www.webmd.com.  The mere fact of medications, even psychotropic ones, is insufficient to

countermand his statements at the plea hearing.

> Petitioner contends that he was mentally incompetent to enter his guilty pleas
> because he was on suicide watch and psychotropic drugs at the time and that the
> drugs made his mouth so numb that he physically could not speak.  The record
> indicates, however, that at his plea  hearing, he verbally stated that he had
> discussed the matters with his counsel, understood the rights he was waiving, and
> that he understood and had discussed with counsel a form he admitted he had
> signed called "Findings of Fact – Acceptance of Guilty Plea."  On this form, he
> indicated that he was not taking any medication or was failing to take any
> prescribed medication, that he understood the nature and consequences of the
> proceeding, and that he committed the crimes as charged.  Based on the testimony
> at the hearing and the form, the state court found that the guilty pleas were
> knowing and voluntary.  We must presume this factual finding to be correct, 28
> U.S.C. § 2254(e)(1), and petitioner has provided nothing but conclusory
> allegations to challenge this finding.  This is insufficient to make the showing
> necessary for a COA to issue.  *See Lasiter v. Thomas,* 89 F.3d 699, 702 (10th
> Cir.1996) ("Solemn declarations in open court carry a strong presumption  of
> verity. The subsequent presentation of conclusory allegations unsupported by
> specifics is subject to summary dismissal, as are contentions that in the face of the
> record are wholly incredible.") (quotation omitted).

*Jarrell v. Jordan,* 7 Fed. App'x 852, 853-54 (10th Cir. 2001).  Furthermore, Petitioner's

depression, agitation, and stress throughout the proceedings is insufficient to render his plea

involuntary.

Petitioner argues the time pressure, stress, mental anguish, and depression he experienced during the plea discussions rendered his no contest plea involuntary. Petitioner contends that the imminence of the Friday, January 26, 1990 deadline and his mental anguish, depression, and stress resulted in an involuntary plea. We disagree. Although deadlines, mental anguish, depression, and stress are inevitable hallmarks of pretrial plea discussions, such factors considered individually or in aggregate do not establish that Petitioner's plea was involuntary. *See Pellerito,* 878 F.2d at 1541 (ruling that although '[c]riminal prosecutions are stressful experiences for nearly all concerned,' the defendant's 'agitated emotional state' did not establish that his guilty plea was involuntary); *Smith v. Campbell,* 781 F. Supp. 521, 535 (M.D. Tenn. 1991) ('All persons on trial for serious crimes, and facing the possibility of multiple life sentences, are under enormous stress. Such pressure is not the sort which serves to render guilty pleas involuntary or unintelligent.'), *aff'd,* 961 F.2d 1578 (6th Cir.), *cert. denied,* 506 U.S. 959 (1992). Consequently, we reject Petitioner's assertion that the plea deadline and his mental state rendered his no contest plea involuntary.

*Miles v. Dorsey,* 61 F.3d 1459, 1470-71 (10th Cir. 1995), *cert. denied,* 516 U.S. 1062 (1996).

The trial judge was well aware that Petitioner was nervous and commented on the same, but he attributed the nervousness to Petitioner's prior incarceration for the same sort of offense and not wanting to go to jail for the rest of his life. This is not an unreasonable given the circumstances of the charges, possible sentence, Petitioner's habitual offender history. The judge also specifically stated at the sentencing hearing that he believed the prior "breakdown" was due to stress and was a "***physical*** reaction." The trial judge was in a position to make that assessment since he had occasion to interact with Petitioner and observe his demeanor on several occasions, including during the plea colloquy. The "cold transcript" above reflects the same as the audio recording reveals – a "cogent and rational  . . . colloquy with the court." *Allen,* 368 F.3d at 1239. I also note that, even though "defense counsel is often in the best position to evaluate a client's competence," *id.,* not one of his attorneys – trial or habeas – ever suggested to the trial judge that Petitioner was incompetent.

Finally, contrary to what Petitioner suggests, the "60-day evaluation for rehabilitation"

that he contends that the trial court "called for," *see Doc. 1-2* at 29, does not indicate that the

trial judge believed Petitioner was mentally incompetent.   Petitioner is confusing two types of

evaluations.  First, there is a sixty-day diagnostic option that a court can use for certain cases to

use in evaluating the appropriate sentence.  However, the relevant statute does not apply to

convictions for first-degree felonies, such as Petitioner's kidnapping conviction.  *See* N.M. STAT.

ANN. § 31-20-3 (West 1978) (" Upon entry of a judgment of conviction of any crime not

constituting a capital or first degree felony . . .").  Although at the end of the plea hearing the

trial judge mentioned the possibility of ordering a "sixty-day diagnostic" along with a

presentence report, he was reminded that the statute did not apply.  *See Plea Hearing 2/7/06*

(3:32:32 PM – 3:35:47 PM).  The second is access to rehabilitation services while incarcerated.

The trial judge specifically found there was "little, if any" possibility that Petitioner could be

rehabilitated.  *See   Sentencing Hearing 5/2/06* (4:21:09 PM – 4:24:16 PM).

Considering all of the evidence, I am unpersuaded that "the trial court ought to have

entertained a bona fide doubt as to his competency to enter a plea." *Allen,* 368 F.3d at 1240; *see

also, e.g., United States v. Vidal,* 561 F.3d 1113, 1121-22 (10th Cir.) ("In *Allen,* the court held

that the trial judge did not err in failing to order a competency hearing where the defendant

assured the court he had reviewed the charges and penalties, had discussed his rights with

counsel, and signed a plea agreement which certified that he understood the charges, penalties,

and rights he was giving up by entering the plea. . . .  This is not appreciably different from the

analysis we have already conducted of Ms. Vidal's substantive claim."), *cert. denied,*130 S. Ct.

221 (2009).  Because he failed to establish a "procedural incompetency" claim, which "does not

require proof of actual incompetency," Petitioner cannot establish the even more difficult

"substantive incompetency," which requires a "higher standard of proof of incompetency by a

preponderance of the evidence." *Allen,* 368 F.3d at 1239. Thus, I do not find the trial judge's

rejection of any sort of "competency" claim is "contrary to" or "unreasonable."

### D.  Matters Predating The Plea

A knowing and voluntary guilty plea constitutes a waiver of all nonjurisdictional

challenges to a conviction. *Tollett v. Henderson,* 411 U.S. 258, 267 (1973) (guilty plea waived

alleged violations of constitutional rights that antedated plea, e.g., composition of the grand

jury); *see also e.g., United States v. Broce,* 488 U.S. 563, 570-74 (1989) (double jeopardy

challenge waived by pleading guilty to separate charges, despite later court ruling that such

charges would have been impermissible); *Goodloe v. Smelser,* 2010 WL 2588168 at * 2 (10th

Cir. 2010) (*Tollett* applies to interstate agreement on detainers claim and noting that, as such, the

state court's rejection of the detainer claim decision "is not contrary to or an unreasonable

application of clearly established Supreme  Court precedent").

One exception to the *Tollett* waiver rule encompasses ineffective assistance of counsel

claims that implicate the voluntary nature of the plea.[10] Here, those claims have already been

rejected above. Another exception encompasses claims that go to jurisdictional matters, a topic

Petitioner did not raise in the state courts or here. Accordingly, Petitioner's claims concerning

---

[10] *See, e.g., Tollett*, 411 U.S. at 267 (We thus reaffirm the principle recognized in the *Brady* trilogy: a guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann*."); *Neef v. Heredia,* 2010 WL 286562 at * 2 (1/26/10) ("When Mr. Neef pled guilty, he admitted the elements of the offenses and waived all non-jurisdictional defects. . . . Mr. Neef cannot independently pursue his motion to suppress because a guilty plea represents a break in the chain of events which has preceded it in the criminal process. . . . As a result, most pretrial issues are waived, at least in the criminal proceeding.") (internal quotations and citation to *Broce,* 488 U.S. at 569-70, *Tollett,* 411 U.S. at 267, *United States v. Wise,* 179 F.3d 184, 186 (5th Cir. 1999), and *Haring v. Prosise,* 462 U.S. 306, 319-21 (1983) omitted).

the suggestive photo array, inculpatory statements, ineffectiveness associated with those areas or

with discovery, and other vague and conclusory ineffectiveness claims need not be addressed on

the merits, and afford no basis for habeas relief.  *See Doc. 14* at 2-3, 6-7.

### E.  Sentencing Claims

Petitioner raises a number of claims concerning his sentence and casts a number of them

as "double jeopardy" violations.  He first contends that the kidnapping and CSP counts should

have "merged" for sentencing purposes.  *See Doc. 14* at 11.  As the New Mexico Courts, the

Tenth Circuit, and this District have held, however, double jeopardy is not violated where, as

here, a defendant first uses the offer of a ride as a lure to take the victim elsewhere to rape her

and, indeed, commits a sexual offense.  *E.g., State v. Schackow,* 140 N.M. 506, 515-16, 143 P.3d

745, 754-55 (N.M. App.) (and cases cited therein), *cert. denied,* 140 N.M. 423, 143 P.3d 185

(2006) *and* 140 N.M. 542, 144 P.3d 101 (N.M. 2006); *see also Jacobs v. Bravo, et al.,* CIV 04-

551 MV/WPL (same, Doc. 43 at 5-9, adopted Doc. 47), *aff'd sub nom., Jacobs v. Looney,* 249

Fed. App'x 10  (10th Cir.), *cert. denied*, 552 U.S. 1079 (2007); *Bernal v. Lytle,* 125 F.3d 861 (10th

Cir. 1997) (unpublished, and cases cited therein), *cert. denied,* 522 U.S. 1151 (1998).

He also contends that his sentence violated double jeopardy and *Apprendi* because he

was given habitual offender penalties for each count, aggravating circumstances penalties in

addition to the habitual offender penalties, and an "indeterminate" period of parole.

New Mexico's statutory sentencing scheme utilizes a "basic" sentence plus possible

additional enhancements.  As noted in the plea agreement and at the plea hearing, the "basic

sentences" for kidnapping and CSP were eighteen years and three years, respectively.  New

Mexico's sentencing statutes also mandate a one-year enhancement to the basic sentence for

habitual offenders.  *See* N.M. STAT. ANN. § 31-18-17(A) (West 1978) ("A person convicted of a

noncapital felony in this state. . . who has incurred one prior felony conviction that was part of a separate transaction. . . is a habitual offender and his basic sentence shall be increased by one year.").  By its express terms, *Apprendi* is inapplicable to enhancements based on the habitual offender statute.  ***"Other than the fact of a prior conviction,*** any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey,* 530 U.S. 466, 490 (2000) (emphasis added).  Because the two offenses are separate for double jeopardy purposes, the fact that he received a one-year enhancement to each basic sentence does not violate double jeopardy either.

Similarly, the New Mexico sentencing scheme provides that "[i]f the district court sentences a sex offender to a term of incarceration . . .  the district court shall include a provision in the judgment and sentence that specifically requires the sex offender to serve an indeterminate period of supervised parole for a period of not less than five years and not in excess of twenty years."  N.M. STAT. ANN. § 31-21-10.1 (West 1978).  This sentencing "enhancement" however, does not require the judge to find any fact beyond the offenses that Petitioner pleaded guilty to in order to impose the term of parole.  *See Blakely v. Washington,* 542 U.S. 296, 303-04 (2004) ("the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings."); *id.* at 305, n.8 (trial judge could not make finding of aggravating factors "without finding some facts to support it beyond the bare elements of the offense. . . . the verdict alone does not authorize the sentence.").  Here, his plea of guilty to CSP alone qualified Petitioner for the mandatory indeterminate sentence of parole.  As such, *Apprendi* is inapplicable.

It is true that New Mexico's "aggravation" statute under which Petitioner's sentence was enhanced eventually succumbed under the *Apprendi* line of cases.  However, the Supreme Court

decision that eventually sounded the death knell for the New Mexico aggravation statue was not issued until January 22, 2007, and the State Court decision that reversed it in light of that case was not issued until October 25, 2007.  *See Cunningham v. California,* 549 U.S. 270, (2007); *State v. Frawley,* 143 N.M. 7, 172 P.3d 144 (N.M. 2007).[11]

By the time these decisions were issued, Petitioner's convictions had long been entered. His original judgment and sentence entered on May 16, 2006, and the amended judgment and sentence that imposed the correct parole term entered on September 6, 2006.  *See id.* at 122, 182. Petitioner did file a *pro se* state habeas petition on August 26, 2006 and raised the double jeopardy sentencing issues.  *See id.* at 156, 161-64.  But the *Cuninngham/Apprendi* issue was not raised until habeas counsel filed the amended counseled petition on March 2, 2007.  *Id.* at 207-11.  The trial judge refused to grant relief on the aggravation claim because *Frawley* specifically held it did not apply retroactively.  He did not specifically discuss the *Cunningham* decision. *See Frawley,* 143 N.M. at 19-20, 172 P.3d at 156-57; *Record Proper* at 321.

The only decision in the *Apprendi* line of cases where the Supreme Court has expressly

---

[11]  The California sentencing scheme at issue was virtually identical in operation to New Mexico's scheme, but both the California and New Mexico state courts had distinguished the Supreme Court cases.  *See Cunningham,* 549 at 288 ("Under California's DSL, an upper term sentence may be imposed only when the trial judge finds an aggravating circumstance. . . .  An element of the charged offense, essential to a jury's determination of guilt, or admitted in a defendant's guilty plea, does not qualify as such a circumstance. . . .  Instead, aggravating circumstances depend on facts found discretely and solely by the judge. . . . While "[t]hat should be the end of the matter," *Blakely* . . ., in People v. Black, the California Supreme Court held otherwise."); *Frawley,* 143 N.M. at 10, 14, 172 P.3d at 147, 151 ("While Frawley's case was pending review in this Court, we published State v. Lopez, 2005-NMSC-036, 138 N.M. 521, 123 P.3d 754. Relying heavily on the California case of People v. Black I . . .  The California sentencing scheme analyzed in Black resembled our own in that a California judge was required to sentence a defendant to a precise "middle term, unless there [were] circumstances in aggravation or mitigation of the crime," in which case the judge could impose an upper or lower term. . . . Although we recognized that the majority of the few state courts reaching the issue had held that *Blakely* "requires a state court to equate the presumptive sentence in a determinate sentencing scheme with the punishment authorized by the jury's verdict," we explicitly rejected that position and sided with Black I.")

held to be retroactive is the *Ring* decision.  It has also expressly declined to determine the

retroactivity of *Blakely*.  *See Burton v. Stewart,* 549 U.S. 147, 149 (2007) (per curiam) ("We

granted certiorari . . . to determine whether our decision in *Blakely* . . . announced a new rule

and, if so, whether it applies retroactively on collateral review.  We do not answer these

questions, however"); *Schriro v. Summerlin,* 542 U.S. 348 (2004) (concluding *Ring* was not

retroactive).  The Circuits have generally held that none of the *Apprendi* through *Cunningham*

decisions apply retroactively to cases on collateral (habeas) review, or have declined to decide

the issue.[12]

     In addition, the bright line for retroactivity is "finality" of the conviction.  This is because

the *Teague* retroactivity question is focused on "whether a state court considering [the

defendant's] claim at the time his conviction became final would have felt compelled by existing

precedent to conclude that the rule [he] seeks was required by the Constitution."  *Earnest v.

Dorsey,* 87 F.3d 1123, 1132 (10th Cir.) (internal quotations and citations to *Caspari v. Bohlen,*

510 U.S. 383, 390 (1994) and *Saffle v. Parks,* 494 U.S. 484, 488 (1990), omitted), *cert. denied,*

---

[12]    Moreover, the Eighth Circuit has consistently held that *Apprendi* and its progeny are not rules of watershed magnitude and has declined to apply those cases retroactively.  *See United States v. Moss,* 252 F.3d 993, 997 (8th Cir.2001) (declining to conclude that *Apprendi* is a procedural rule of watershed magnitude); *United States v. Stoltz,* 149 Fed. App'x 567, 568-69 (8th Cir. 2005) (declining to apply *Blakely* retroactively because it is not a rule of watershed magnitude); *see also Never Misses A Shot v. United States,* 413 F.3d 781, 783 (8th Cir. 2005) (holding that *Booke*r does not apply retroactively).  Further, we note that the Third Circuit likewise concluded that *Cunningham* did not announce a watershed rule in *Reinhold v. Rozum,* 604 F.3d 149, 156 (3rd Cir. 2010).

*Burton v. Fabian,* 2010 WL 2790933, 6 n. 4 (8th Cir. 2010); *see also, e.g., United States v. Bellamy,* 411 F.3d 1182, 1184 (10th Cir. 2005) (*Booker* not retroactive); *United States v. Price,* 400 F.3d 844, 849 (10th Cir.) (*Blakely* not retroactive), *cert. denied,* 546 U.S. 1030 (2005); *United States v. Mora,* 293 F.3d 1213, 1219 (10th Cir.) (*Apprendi* not retroactive), *cert. denied,* 537 U.S. 91 (2002); *Thompson v. McKune,* 291 Fed. App'x. 870, 874 (10th Cir. 2008) ("Even ***assuming*** *Cunningham* retroactively applies to Thompson's case, his sentence is still constitutional.") (emphasis added).

519 U.S. 1016 (1996).  "A state conviction and sentence become final for purposes of retroactivity analysis when the availability of direct appeal to the state courts has been exhausted and the time for filing a petition for a writ of certiorari has elapsed or a timely filed petition has been finally denied."  *Caspari,* 510 U.S. at 390 (citing *Griffith v. Kentucky,* 479 U.S. 314, 321, n. 6 (1987)).

Thus, there are three independent reasons to reject Petitioner's last *Apprendi* claim. Foremost, no clearly established Supreme Court precedent holds that *Apprendi, Blakely,* or *Cunningham* apply retroactively.  Also, the comity concerns that underlie the *Teague/Caspari* reasoning compel the conclusion that no federal habeas relief should be granted because Petitioner was sentenced under now-superceded aggravated sentencing procedures.  *See, e.g, Danforth v. Minnesota,* 552 U.S. 264, 271-84 (2008) (extensive discussion of  historical underpinnings of retroactivity and comity concerns).  Finally, I cannot conclude that the trial judge's rejection of *Frawley* as nonretroactive is "contrary to" or "unreasonable." Notwithstanding the pending *pro se* state habeas petition, it appears that the trial judge deemed Petitioner's conviction "final" as of when the judgment and sentences entered and that he did not consider the *pro se* petition to have suspended the finality of those entries.  Since Petitioner waived a direct appeal and the State was the one that pursued modification of the sentence, this is not an unreasonable conclusion.  *See Record Proper* at 99 (plea section entitled "Waiver of defenses and appeal."); *see also State v. Chavarria,* 208 P.3d 896, 901 (N.M. 2009) (noting that "a defendant who knowingly, intelligently, and voluntarily pleads guilty, waives the right to appeal his conviction and sentence," and that alternative means to challenge the sentence are "a conditional plea of guilty and reserve the right to challenge the constitutionality of his sentence on appeal [under] Rule 5-304(A)(2)," or "following the imposition of sentence" a motion to

modify under Rule 5-801 or petition for state habeas relief).

### F.  Miscellaneous Ineffectiveness Issues

For the reasons above, Petitioner's claims that focus on faulting counsel for allegedly having a conflict of interest in that he was closing down his practice, failing to object to the amended judgment procedure, and failing to Petitioner that he had to register as a sex offender, at the very least afford no basis for habeas relief under the prejudice prong of *Strickland*.

Wherefore,

**IT IS HEREBY RECOMMENDED** that the § 2254 petition be denied on the merits and this action dismissed with prejudice.

**WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

_____
UNITED STATES MAGISTRATE JUDGE